# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN

| | | |
|---|---|---|
| DAVID BINTZ, and<br>ROBERT BINTZ, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. |
| | ) | |
| RICHARD A. LUELL, | ) | Demand For Jury Trial |
| ROBERT HAGLUND, and | ) | |
| CITY OF GREEN BAY, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiffs, David Bintz and Robert Bintz, by and through counsel, the Law Office of Jarrett Adams, complain against Defendants, Richard A. Luell, Robert Haglund, and City of Green Bay as follows:

## INTRODUCTION

1. This is a federal civil rights action to obtain compensatory damages, punitive damages, costs, and attorneys' fees for the unlawful detention, malicious prosecution, fabrication of evidence, concealment of exculpatory evidence, use of a coerced confession, and unfair trial against David Bintz and Robert Bintz, resulting in them each being held in custody in violation of their constitutional rights for approximately twenty-five (25) years.

## JURISDICTION

2. This action is brought under 42 U.S.C. § 1983 to address the deprivation under color of law of David Bintz and Robert Bintz's rights as secured by the United States Constitution and under state law.

3. The Court has jurisdiction over David Bintz and Robert Bintz's federal claims pursuant to 28 U.S.C. §§ 1331 and 1343, and has supplemental jurisdiction over their state law claim pursuant to 28 U.S.C. § 1367.

4. Venue is proper under 28 U.S.C. § 1391(b) because the Eastern District of Wisconsin is the judicial district where the constitutional rights violations suffered by David Bintz and Robert Bintz occurred.

**PARTIES**

5. Plaintiff, David Bintz ("David"), is a citizen of the United States of America who at all relevant times resided in Wisconsin.

6. Plaintiff, Robert Bintz ("Robert"), is a citizen of the United States of America who at all relevant times resided in Wisconsin.

7. Defendant, Richard A. Luell ("Defendant Luell"), at all relevant times, was an adult resident of the State of Wisconsin and a Special Agent for the State of Wisconsin Department of Justice, Division of Criminal Investigation, who was acting while carrying out his duties as an officer/employee and within the scope of employment by the State of Wisconsin. At all relevant times, the State of Wisconsin was the principal and employer of Defendant Luell. As the principal and employer, the State of Wisconsin is liable under Wisconsin law, including Wis. Stat. § 895.46, for any judgment against Defendant Luell in this action.

8. Defendant, Robert Haglund ("Defendant Haglund"), at all relevant times, was an adult resident of the State of Wisconsin and was a Green Bay Police Department ("GBPD") detective, who was acting while carrying out his duties as an officer/employee and within the scope of employment by Defendant, City of Green Bay.

2

9. Defendant, City of Green Bay ("Defendant City"), is a political subdivision of the State of Wisconsin. At all relevant times, Defendant City was the principal and employer of Defendant Haglund. As the principal and employer, Defendant City is liable under Wisconsin law, including Wis. Stat. § 895.46, for any judgment against Defendant Haglund in this action.

## FACTS

10. On August 3, 1987, Sandra Lison ("Lison") disappeared after working at the Good Times Bar in Green Bay, Wisconsin.

11. On August 4, 1987, Lison's deceased body was found in Machickanee Forest in Oconto County, Wisconsin.

12. There was significant evidence that Lison had been sexually assaulted, including but not limited to blood and semen on Lison's dress, semen on Lison's underwear, and semen in Lison's vagina.

13. David and Robert did not kill Lison.

14. There was no probable cause to believe that David and Robert killed Lison.

15. David and Robert did not sexually assault Lison.

16. There was no probable cause to believe that David and Robert sexually assaulted Lison.

17. The initial investigation into the sexual assault and murder of Lison occurred in 1987 and 1988.

18. The GBPD interviewed and took statements from David and Robert in 1987 and 1988.

3

19. David is intellectually disabled, has chronic anxiety disorder, suffers from easy confusion, is easily led and influenced by others, is threat-sensitive, and tends to break down under stressful situations.

20. Forensic testing eliminated David and Robert as the source of the blood on Lison's dress.

21. Forensic testing eliminated David and Robert as the source of the semen on Lison's dress, on her underwear, and in her vagina.

22. There was no physical evidence that David and Robert sexually assaulted and murdered Lison.

23. David and Robert were not arrested for or charged with the sexual assault and murder of Lison in 1987 or 1988.

24. No one was arrested for or charged with the sexual assault and murder of Lison for several years.

25. In 1999, Defendant Luell and Defendant Haglund knowingly fabricated third-party witness statements falsely implicating David and Robert in the murder of Lison.

26. The false third-party witness statements fabricated by Defendant Luell and Defendant Haglund were that David had made audible statements while dreaming and statements while awake suggesting that he and Robert were involved in the murder of Lison.

27. Defendant Luell and Defendant Haglund created reports documenting the fabricated third-party witness statements falsely implicating David and Robert in the murder of Lison.

28. Defendant Luell and Defendant Haglund used the fabricated third-party witness statements during an interrogation to coerce David into confessing to the murder of Lison, as set forth in the subsequent paragraphs.

4

29. Defendant Luell and Defendant Haglund interrogated David for several hours, while David consistently denied involvement in the murder of Lison.

30. At the time of the interrogation, Defendant Luell and Defendant Haglund knew or should have known of David's intellectual disability and psychological vulnerabilities, and they exploited those vulnerabilities during the interrogation.

31. Defendant Luell and Defendant Haglund denied David water, food, and use of the restroom during the interrogation.

32. After David consistently denied involvement in the murder of Lison for several hours, Defendant Luell and Defendant Haglund paused the interrogation to retrieve a report of the fabricated third-party witness statements implicating David and Robert in the murder of Lison.

33. When Defendant Luell and Defendant Haglund returned, David told them that he was experiencing severe stomach pain and burning so bad that it was eating him up and causing him to cry.

34. Instead of stopping the interrogation and getting medical attention for David, Defendant Luell and Defendant Haglund continued interrogating David.

35. Defendant Luell read the report of the fabricated third-party witness statements to David.

36. Because Defendant Luell and Defendant Haglund would not stop the interrogation despite David's report of severe stomach pain and burning and because David wanted the interrogation to end, David agreed that the fabricated third-party witness statements implicating himself and Robert in the murder of Lison were true – even though they were in fact false.

37. Defendant Luell and Defendant Haglund coerced David into agreeing that the fabricated third-party witness statements implicating himself and Robert in the murder of Lison were true.

38. Defendant Luell and Defendant Haglund did not video or audio record the coerced and involuntary confession by David.

39. Defendant Luell and Defendant Haglund did not ask David to sign the coerced and involuntary confession.

40. Defendant Luell authored a written summary of the interrogation, which was thereafter treated and used by the prosecution as an unsigned confession by David.

41. Because Defendant Luell and Defendant Haglund fabricated third-party witness testimony, fabricated evidence, and coerced David into a false confession, David and Robert were charged with the murder of Lison in 1999.

42. At a pretrial hearing in February 2000, the trial court ruled that David's coerced confession could be used at the trial of David but not at the trial of Robert.

43. After the February 2000 pretrial ruling, Defendant Haglund knowingly fabricated additional witness statements falsely implicating David and Robert in the murder of Lison.

44. The false third-party witness statements fabricated by Defendant Haglund were that Robert had made statements and had physical reactions during a car trip, suggesting that he and David were involved in the murder of Lison.

45. Defendant Haglund created reports documenting the additional fabricated witness statements falsely implicating David and Robert in the murder of Lison.

46. The trial of David for the murder of Lison occurred in May 2000.

47. During the trial of David, the third-party witnesses falsely testified by implicating David in the murder of Lison.

48. Defendant Luell and Defendant Haglund knew that the third-party witness testimony against David was false.

49. Defendant Luell and Defendant Haglund did not tell the trial court, prosecutors, or David that the third-party witnesses' testimony was false.

50. The reports created by Defendant Luell and Defendant Haglund documenting the fabricated third-party witness statements falsely implicating David in the murder of Lison were used as evidence in the trial of David.

51. Defendant Luell and Defendant Haglund did not tell the trial court, prosecutors, or David that the reports were false.

52. David's coerced and involuntary confession was used against him at trial.

53. Because Defendant Luell and Defendant Haglund fabricated third-party witness testimony, fabricated evidence, and coerced David into a false confession, David was convicted of murder and sentenced to life in prison.

54. The trial of Robert for the murder of Lison occurred in July 2000.

55. During the trial of Robert, the third-party witnesses falsely testified by implicating Robert in the murder of Lison.

56. Defendant Luell and Defendant Haglund knew that the third-party witness testimony against Robert was false.

57. Defendant Luell and Defendant Haglund did not tell the trial court, prosecutors, or Robert that the third-party witnesses' testimony was false.

7

58. The reports created by Defendant Luell and Defendant Haglund documenting the fabricated third-party witness statements falsely implicating Robert in the murder of Lison were used as evidence against Robert at trial.

59. Defendant Luell and Defendant Haglund did not tell the trial court, prosecutors, or Robert that the reports were false.

60. Because Defendant Luell and Defendant Haglund fabricated third-party witness testimony and fabricated evidence, Robert was convicted of murder and sentenced to life in prison.

61. In 2019, Robert filed a motion for post-conviction scientific testing of the blood, semen, and hair found at the crime scenes for the murder of Lison.

62. The trial court granted the motion and additional scientific testing of the evidence occurred over the following few years.

63. In 2024 after the conclusion of the scientific testing, David and Robert filed motions to vacate their convictions and for discharge from custody.

64. Following the motions, the prosecutors, David, and Robert filed stipulations agreeing that the convictions should be vacated and that David and Robert should be released from custody.

65. The prosecutors, David, and Robert agreed to numerous facts in the stipulations, as set forth in the subsequent paragraphs.

66. The stipulations stated that David and Robert's fingerprints and DNA were not present on any of the evidence from the crime scenes for the murder of Lison.

67. The stipulations stated that the source of the blood and semen from the evidence was one of three brothers, including William J. Hendricks ("Hendricks"), who died in 2000.

8

68. The stipulations stated that Hendricks lived in Green Bay, Wisconsin at the time of Lison's murder.

69. The stipulations stated that Hendricks had a history of sexual and violent crime.

70. The stipulations stated that customers at the Good Times Bar on the night Lison disappeared saw a vehicle matching the description of a vehicle driven by Hendricks.

71. The stipulations stated that recent laboratory testing established that Hendricks' fingerprints were on a cigar box used to store cash at the Good Times Bar at the time Lison disappeared.

72. The stipulations stated that recent laboratory testing established that Hendricks was the source of the male DNA found in a vaginal swab of Lison.

73. The stipulations stated that the odds of a random person's DNA matching the male DNA found in a vaginal swab of Lison were 1 in 329 trillion.

74. The stipulations stated that there was a strong probability that Hendricks sexually assaulted and murdered Lison.

75. Based upon the stipulations, the prosecutors, David, and Robert agreed that the convictions should be vacated, and that David and Robert should be released from prison.

76. Based upon the stipulations between the prosecutors, David, and Robert, the trial court entered Orders on September 25, 2024, that David and Robert's convictions and sentences are vacated, and that David and Robert be discharged from custody.

77. David was released from custody on September 25, 2024.

78. Robert was released from custody on September 26, 2024.

9

79. The conduct of Defendant Luell and Defendant Haglund, as set forth in the preceding paragraphs, resulted in damages and injuries to David and Robert, including but not limited to loss of liberty, physical injury and sickness, and severe emotional pain and suffering.

80. David and Robert's injuries and damages would not have occurred but for the conduct of Defendant Luell and Defendant Haglund, as set forth in the preceding paragraphs.

81. The conduct of Defendant Luell and Defendant Haglund, as set forth in the preceding paragraphs, was the actual cause of David and Robert's damages and injuries.

82. The conduct of Defendant Luell and Defendant Haglund, as set forth in the preceding paragraphs, was a proximate cause of David and Robert's damages and injuries.

83. The conduct of Defendant Luell and Defendant Haglund, as set forth in the preceding paragraphs, was objectively unreasonable, intentional, purposeful, knowing, willful, wanton, and/or reckless, and was undertaken with malice and/or reckless disregard of David and Robert's constitutional rights.

## CAUSES OF ACTION

### COUNT I: 42 U.S.C. § 1983 – Violation of Fourth Amendment

### David Against Defendant Luell and Defendant Haglund

84. David hereby re-alleges and incorporates by reference each of the preceding paragraphs as if fully restated herein.

85. David was detained because of evidence fabricated, concealed, and coerced by Defendant Luell and Defendant Haglund.

86. There was no probable cause to detain David.

87. David was prosecuted because of evidence fabricated, concealed, and coerced by Defendant Luell and Defendant Haglund.

10

88. There was no probable cause to initiate the prosecution of David.

89. Defendant Luell and Defendant Haglund's motive in instituting the prosecution of David was malicious.

90. The prosecution of David ended with his conviction being vacated.

91. Defendant Luell and Defendant Haglund acted under color of law.

92. The unlawful detention and malicious prosecution of David resulted in damages and injuries to David.

### COUNT II: 42 U.S.C. § 1983 – Violation of Fifth Amendment

### David Against Defendant Luell and Defendant Haglund

93. David hereby re-alleges and incorporates by reference each of the preceding paragraphs as if fully restated herein.

94. Defendant Luell and Defendant Haglund improperly coerced David's confession.

95. The coerced confession was used against David at his criminal trial.

96. Defendant Luell and Defendant Haglund acted under color of law.

97. The use of the coerced confession against David resulted in damages and injuries to David.

### COUNT III: 42 U.S.C. § 1983 – Violation of Fourteenth Amendment

### David Against Defendant Luell and Defendant Haglund

98. David hereby re-alleges and incorporates by reference each of the preceding paragraphs as if fully restated herein.

99. Defendant Luell and Defendant Haglund knowingly fabricated evidence that was used against David at his criminal trial.

100. The evidence fabricated by Defendant Luell and Defendant Haglund was material and affected the decision of the jury which convicted David.

101. The evidence fabricated by Defendant Luell and Defendant Haglund was used to deprive David of his liberty.

102. Defendant Luell and Defendant Haglund knowingly concealed evidence that was favorable to David from prosecutors and David.

103. The concealed evidence resulted in prejudice to David.

104. Defendant Luell and Defendant Haglund improperly coerced David's confession.

105. The conduct of Defendant Luell and Defendant Haglund in coercing David's confession shocks the conscience.

106. The conscience-shocking coerced confession was used against David at his criminal trial.

107. Defendant Luell and Defendant Haglund acted under color of law.

108. The fabrication of evidence, concealment of evidence, and the use of the conscience-shocking coerced confession against David resulted in damages and injuries to David.

**COUNT IV: 42 U.S.C. § 1983 – Violation of Fourth Amendment**

**Robert Against Defendant Luell and Defendant Haglund**

109. Robert hereby re-alleges and incorporates by reference each of the preceding paragraphs as if fully restated herein.

110. Robert was detained based upon evidence fabricated and concealed by Defendant Luell and Defendant Haglund.

111. There was no probable cause to detain Robert.

112. Robert was prosecuted because of evidence fabricated and concealed by Defendant Luell and Defendant Haglund.

113. There was no probable cause to initiate the prosecution of Robert.

114. Defendant Luell and Defendant Haglund's motive in instituting the prosecution of Robert was malicious.

115. The prosecution of Robert ended with his conviction being vacated.

116. Defendant Luell and Defendant Haglund acted under color of law.

117. The unlawful detention and malicious prosecution of Robert resulted in damages and injuries to Robert.

**COUNT V: 42 U.S.C. § 1983 – Violation of Fourteenth Amendment**

**Robert Against Defendant Luell and Defendant Haglund**

118. Robert hereby re-alleges and incorporates by reference each of the preceding paragraphs as if fully restated herein.

119. Defendant Luell and Defendant Haglund knowingly fabricated evidence that was used against Robert at his criminal trial.

120. The evidence fabricated by Defendant Luell and Defendant Haglund was material and affected the decision of the court which convicted Robert.

121. The evidence fabricated by Defendant Luell and Defendant Haglund was used to deprive Robert of his liberty.

122. Defendant Luell and Defendant Haglund knowingly concealed evidence that was favorable to Robert from prosecutors and Robert.

123. The concealed evidence resulted in prejudice to Robert.

124. Defendant Luell and Defendant Haglund acted under color of law.

125. The fabrication of evidence and concealment of evidence resulted in damages and injuries to Robert.

## COUNT VI: Wisconsin State Law Indemnification

## David Against Defendant City

126. David hereby re-alleges and incorporates by reference each of the preceding paragraphs as if fully restated herein.

127. Wisconsin law, including Wis. Stat. § 895.46(1)(a), requires municipalities such as Defendant City to pay any judgment as to damages against its officers and employees because of acts committed within the scope of employment.

128. At all relevant times, Defendant Haglund was an officer and employee of Defendant City acting within the scope of employment.

## COUNT VII: Wisconsin State Law Indemnification

## Robert Against Defendant City

129. Robert hereby re-alleges and incorporates by reference each of the preceding paragraphs as if fully restated herein.

130. Wisconsin law, including Wis. Stat. § 895.46(1)(a), requires municipalities such as Defendant City to pay any judgment as to damages against its officers and employees because of acts committed within the scope of employment.

131. At all relevant times, Defendant Haglund was an officer and employee of Defendant City acting within the scope of employment.

14

Wherefore Plaintiffs, David Bintz and Robert Bintz, respectfully request that the Court enter judgment in their favor and against Defendants, Richard A. Luell, Robert Haglund, and City of Green Bay, awarding compensatory damages, costs, and attorneys' fees, punitive damages against Defendant Luell and Defendant Haglund, as well as any other relief the Court deems appropriate.

Date: July 13, 2026

Respectfully Submitted,

David Bintz and Robert Bintz

s/ Jarrett Adams
Jarrett Adams
Eastern District of Wisconsin Bar No. 5455715
THE LAW OFFICE OF JARRETT ADAMS, PLLC
40 Fulton Street, Floor 15
New York, NY 10038
T: & F: (646) 880-9707
E: JAdams@JarrettAdamsLaw.com